So our first case for this morning is United States v. Ronald Norweathers. Ms. Winslow. Good morning. May it please the court, counsel. The district court erred when it allowed the government to admit conversations by e-mail from November of 2008 which discussed in graphic detail the drugging and raping of a child. Now, Ms. Winslow, I'm going to start you off because the government offered to introduce a far more sanitized version of the e-mails. And doesn't that make it difficult for you to now complain about the amount of prejudice here? It doesn't make my job easier, Judge, I'll tell you that, and I actually anticipated that would be an early question. I was not trial counsel, as the court is aware. I was counsel prior to trial and then following trial, but I did not try this case. To my understanding, there was an offer that there would be a sanitized version of the e-mails could have been negotiated. Trial counsel decided that he did not wish to have the sanitized version admitted. And what's missing from the record is exactly what that sanitized version would have looked like. I did interview trial counsel, and he was unable to give me any specific information. But it is my understanding that even the sanitized version of the e-mails would have discussed the drugging and raping of a child. But if you say that, as opposed to actually read off the words, it's different. Can I just ask, maybe pose the same question in a slightly broader framework? Sure. We, as you know, have received a number of communications from Mr. Norwether's. You have. Two, and we have a very firm rule against dual representation. But when you say the record isn't clear about what that would have been, it makes me wonder whether some of these issues can or will arise in a 2255 motion eventually. I have absolutely no reason to believe that they will not. Okay. In fact, I'm quite confident that they will. That Mr. Norwether's will try his hand at that. Oh, I'm absolutely confident that that will be his next course of action. Both against myself and against trial counsel. Yes, no, it's a difficult position to be in. I mean, it's very hard to understand the strategic reason for wanting these e-mails to come in. However, I guess the issue before us now is also whether either it was error for them to come in. The government offers a number of ways that they could be used that are consistent with 404B. Or if it was error, whether it can be regarded as harmless. Well, Judge, the government does offer two explanations for that now. Before the district court, the government's primary argument was that the e-mails were probative of identity. Because the question of identity was very much at issue in this case. The question really at trial, the primary question was who sent the e-mails. And during the government's case in chief, the primary gist of the cross-examinations and also the opening statement was e-mails were sent. The question is who sent them. But it was implicit in that question. I know there was some other evidence that tied this e-mail account to financial transactions and to things that certainly would not have had that kind of prejudicial impact. But I guess what the government was trying to say is, yes, you're the sender and you're the one who's using it for this illicit purpose. It's not like he spent some time dealing with his Amazon account and then some other person sneaked into his office and started sending this awful stuff. Right. And, of course, I know that the court has read the brief. But just to be specific, on March 11, 2009, which is temporally very proximate to the e-mails that were charged, there was a banking transaction with Chorus Bank, Mr. Norweather's account. March 5, again, very proximate, there was a transaction with Chase Bank, Mr. Norweather's account. March 1, social conversation with someone who addresses the person as Ron. And February 13, 2009, another transaction with Amazon. So those are not only very close in time, but you can tie those transactions to Ronald Norweather's. This conversation in 2008 is between two individuals. One individual who the government knows because of investigation, and then the second individual is not identified. So whether or not that person was Ronald Norweather's still remains a question, and I don't think that that was ever properly established at trial. It's an inference for the jury, surely, but the probative value of those conversations is substantially limited by the fact that we don't know who was engaging in them. They're not close in time. This is November of 2008 versus charges that arise from March and August of 2009. Well, it's four months off, basically, from the March 13. Four months is a significant period of time. The e-mail address isn't Ronald Norweather's at yahoo.com or whatever it is. It's tame181 at yahoo.com. It doesn't identify the user by name in particular. But I thought that the financial things did, in fact, tie that e-mail address to him. Four months later. They do four months later, Judge. And the question is whether or not the probative value of those conversations four to five months prior is substantially probative enough to overcome the overwhelmingly prejudicial effect in this case. The conversations that are recounted in my brief twice, well, once in each brief, and in the government's brief, are frankly shocking. What about once he pivots during the trial from this identity defense to this public authority defense? That's pretty late in the day, right? It's very late in the day. But once that comes in, don't these e-mails help with respect to motive and intent and the like? They do. However, they were admitted well in advance of this pivot, as Your Honor calls it. That's true. And so when the judge ruled that they were relevant and they were admissible, this defense was unknown, frankly, to anyone, I believe, including trial counsel. Let me just quickly ask you. Judge Rovner, did you have a question? I did, yes. Thank you. Didn't he, Mr. Norwether, you know, place motive into issue by arguing that his motive for having child pornography on his computer was that he was working for the FBI? Judge, he did place it into issue at that time, but these e-mails had already been admitted. So by the time Mr. Norwether's made the decision to pursue that defense, this error by the district court had already been committed and certainly would have colored his choices for the balance of the trial as to how he would deal with his defense and the defense strategy. But wouldn't the government have had an opportunity after he moved to the public authority defense to introduce them? It would have. In other words, I'm wondering how much of a big deal we should make of this timing. Well, I think we should make a very big deal. Of course, I think that. That's all right. I think we should make a big deal out of it. And the reason is because every decision that the district court made prior to Mr. Norwether's making the decision about his own defense colored his choices about the defense that he would present. And so had the district court not made this error of admitting these e-mails, it's entirely likely that Mr. Norwether's would not have pursued the public authority defense as he chose to do at, I guess we could call it the 11th hour. The e-mails are neither probative to identity nor to motive. As set forth in the brief, I see I'm about to run into my rebuttal time. If the panel has no further questions, I will reserve the balance of my time. That's fine. Thank you. Thank you, Judge. Yes, Ms. Kostanek. Good morning, and may it please the court. The district court did not err in admitting under Rule 404B the e-mails that the defendant sent to and from that Tame 181 account in November of 2008. One of the arguments that Ms. Winslow makes is that it is not clear who the user of that account was, including back in 2008, and that is incorrect on this record. One of the reasons that these e-mails were relevant for a non-propensity purpose, and that is to prove the identity of the defendant, was because Government's Exhibit 11R, which are these 404B e-mails, were sent at roughly the same time within minutes of work-related e-mails that the defendant sent from his Tame 181 account tied by IP address to the defendant's workplace. So how this was argued as to identity at trial was that in November 2008, same day, within minutes of each other, the defendant was accessing this Tame 181 account, both for work purposes in e-mails that identified himself as Ron and in which he discussed with his work colleagues certain work matters, at the same time that he was using that account to further his sexual interest in children. But the thing is that bothers me about this is it seems that what the government is trying to prove is that he has a propensity to be abusive to children. You had identity evidence with respect to this work computer, and until he moves over to the public authority defense, you had plenty of ways. And on a 403 kind of basis, I'm just thinking of the progression under Gomez, it's hard for me to come up with a propensity-free chain, and once you get to 403, this is so overwhelmingly prejudicial. It's hard to see how you couldn't find an abusive discretion. Yes, Your Honor. I think that there are a number of propensity-free reasonings for introducing this evidence, and of course 404B prohibits the use of evidence for a prohibited purpose, that is propensity. It was used at trial for legitimate reasons, including to prove identity and motive and intent. So let me take those separately. And could you do it with respect to his original defense? Yes, Your Honor. Because once he's got public authority into the mix, things look different to me. But as Ms. Winslow argues, his whole trial strategy might have been different if this stuff hadn't come in. Yes, Your Honor. So first with respect to identity, the defendant argued before trial and at trial that his workplace computer, the desktop computer on which this child pornography was found, was located in an open space in the warehouse. It was not password protected, and therefore anybody could have just hopped on in March and August of 2009 to send just those specific emails. Somebody could have set him up is essentially what his argument was at trial. And the fact that he was accessing that email account to further his sexual interest in minors back in November of 2008, so Government's Exhibit 11R, the challenged emails, at the same time that he's conducting work-related business is strong evidence of his identity, that he is the person using that email account on his work computer for both work and non-work-related purposes. So that's the identity chain of reasoning. I respectfully disagree with Ms. Winslow that motive and intent were not at issue. In fact, prior to trial, it's Docket Entry 180, the defense pursued or argued pre-trial that there was the possibility of files being put on his computer without his knowledge. At trial, pages 239 and 240 of the trial transcript, the defendant argued at trial through his defense counsel that these could have been viruses. So in other words, somebody is coming in and they're putting these files onto his computer, sending this child pornography without his knowledge, or there's some sort of mistake. So even before the public authority defense, intent and motive were at issue. And the government argued in both of its filings before the district court when it was approaching the 404B issue that this evidence should be admitted both to dispute identity or to prove identity, as well as to prove intent and motive. So give me a bit of context. You know, we don't convict people for their fantasies or role-playing, no matter how debased. And nothing about the actual email had anything to do with child... How was it relevant to the child pornography charges? Yes, Your Honor, and of course the government agrees that individuals should not be convicted on mere idle talk.  However, I disagree that these emails are not relevant to assessing his sexual interest in minors. So Chambers is a great example where a defendant was engaged in chats with an undercover agent about being interested in having sex with children. And that's precisely what these emails that the defendant was sending were about. He is talking about drugging young children in order to facilitate sex with them. And this court has held in Chambers and in Siebold and a whole line of cases that the motive in this context, it's not like a money motive in a fraud case, which is incredibly generic. It's a very narrow population of people who have a sexual interest in children. It provides a motive for sending child pornography that's unique. So instead of doing it by accident or for some other legitimate or innocent reason, they are doing it because they have joy in sending child pornography or they hope to receive child pornography in return. And one of the court's rationales in Siebold was the fact that there is a distinction between molestation or talking about molestation and child pornography. The charged conduct actually makes it more permissible under 404B rather than less so because it's not exactly the same conduct but it does establish that sexual interest in minors. I will also pick up, Judge Rovner, on your point in your question to Ms. Winslow about the sanitized version of these emails. And it is not correct. The record doesn't contain information about this. There actually is a pretty thorough discussion. Well, there is a discussion on the record, page 259 of the trial transcript in which the government indicates on the record, puts on the record its discussions with trial counsel about what the sanitized stipulation would say. And on that page it says we offered Mr. Kuzoski to discuss the emails in a more cursory form to just say at the following dates and times from the following email addresses and IP addresses there were emails discussing sexual interest in minors sent from this email, a Yahoo email account. In other words, it would have just been dates, times, the email addresses involved and the fact that the emails were discussing sexual interest in children. Doesn't that sound to you like almost per se an effective assistance of counsel to forego that kind of a presentation in favor of the graphic nature of the conversation as it came in? So the record does not reflect what the strategic reason for this may have been. Hard to imagine. If I were to hypothesize, it may have been linked in with the defendant's planned public authority defense. At the time that this stipulation was offered, the government and the court had no idea that the defendant was going to get up and testify that he was an FBI informant. But he apparently knew that. But you had some time to scramble around and find out that there was no FBI agent by the name of, whatever the name was, that he said he was working with. Yes, Your Honor. I think that there was about a day, if I remember correctly from the record, the defendant disclosed that that would be the nature of his testimony. He testified the next day and the government began to call rebuttal witnesses in response, Your Honor. But at the time that this stipulation was offered, at the time the 404B evidence was introduced, the government and the court did not know about the public authority defense. And that's important to the potential strategic reason here, because one of the things that the defendant testified is that he started acting as an informant in October of 2008, so one month prior to those emails, and that these emails apparently were encompassed within his work for the FBI. If the court has no further questions, I see that my time is about up, and I will ask this court to affirm the district court's judgment. All right, thank you. Anything further, Ms. Winslow? Yes, Your Honor. First of all, and I think this may be outside the record, you'll have to pardon me, there was, from my understanding, no previously planned public authority defense. That was a surprise to everyone in the courtroom. Well, it wouldn't be outside. I mean, I guess if there's no written record of planning to do it, you could say at least the record was silent. The record is, in fact, silent on that. I'd like to address specifically the government's continued reliance on the two cases Chambers and Siebel. I discussed this in detail in the reply brief, but it bears repeating. The government continually rests on the argument that this prior conduct shows a generalized sexual interest in children, and it relies on both Chambers and Siebel in support of this argument. Which is somehow different in the government's view from a propensity. It is not in mine. In mine, it is very much the same thing. That's right, I thought you were going, yes. Yes, but specifically Chambers. Chambers involved an attempt to entice a minor to engage in sexual activity. The prior evidence of chats and child pornography were directly relevant to show that the defendant had a sexual interest in children that would provide the motivation for him to actually engage in sexual conduct. In that case, the defense was, Mr. Chambers' defense was, I didn't ever intend to meet this individual for sexual purposes. Therefore, that prior evidence was directly relevant. Similar in Siebel, evidence of the prior conduct was relevant to establishing that the defendant was going through, and the court's word is not mine, a dry spell, and was looking for a new child victim to abuse. That, again, was prior misconduct that was directly relevant to a motive in that case. In this case, there is no nexus between a generalized sexual interest in children and the actual crime that was charged and convicted here. The district court erred in admitting the 2008 emails. That error was overwhelming prejudice, and we ask that this court reverse and remand. Thank you. All right. Thank you very much, and we appreciate very much your taking the appointment, Mr. Norweathers. Thanks as well to the government. We'll take the case under advisement.